**In re Carl M. MAZZOCONE, Debtor.**

**Lewis KATES, Appellant,**

**v.**

**Carl M. MAZZOCONE, Appellee.**

Civ. A. No. 94–4198.
Bankruptcy No. 93–12296S.

United States District Court,
E.D. Pennsylvania.

March 6, 1995.

Jay G. Ochroch, Fox, Rothschild, O'Brien & Frankel, Joel W. Todd, Dolchin, Slotkin & Todd, P.C., Philadelphia, PA, for Carl M. Mazzocone.

Neil S. Witkes and Pamela H. Woldow, Manko, Gold & Katcher, Bala Cynwyd, PA, Melvin Lashner, Lashner & Lashner, Philadelphia, PA, for Lewis Kates.

Aramdo A. Pandola, Jr., Philadelphia, PA, pro se.

Joseph F. Minni, Philadelphia, PA, for Frederic Baker, Asst. U.S. Trustee.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

The instant appeal arises out of the Chapter 11 bankruptcy proceedings of Carl M. Mazzocone, debtor and appellee. Appellant Lewis Kates appeals from an Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania dated June 2, 1994 dismissing the bankruptcy case. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). For the following reasons, the June 2, 1994 Order of the bankruptcy court will be vacated, and the case will be remanded to the bankruptcy court for further proceedings not inconsistent with this memorandum opinion.

### I. BACKGROUND

Appellant and debtor are adversaries in ongoing litigation involving four partnerships: the law partnerships of Kates, Livesey & Mazzocone and Kates & Mazzocone and the real estate partnerships of Kates, Livesey & Mazzocone and Kates & Mazzocone. On April 16, 1993, while this litigation was ongoing, debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. During the pendency of the bankruptcy proceedings, debtor remained in possession of his assets and functioned as a debtor-in-possession.

On April 20, 1994, the court-appointed examiner filed what was to be his final report ("the Fifth Report"). Both appellant and debtor filed objections to various portions of this report. On May 6, 1994, the bankruptcy court invited all parties to file motions to convert or dismiss the case, apparently because the examiner had been unable to resolve the objections of the parties to the Fifth Report. Responding to the bankruptcy court's invitation, appellant, joined by a number of other creditors, filed a motion to convert and to appoint a trustee. The United States Trustee filed a motion to dismiss, which was initially opposed by both appellant and debtor. At the June 1, 1994 hearing on these motions, however, debtor stated that he was reversing his previous position and would support the motion to dismiss. Appellant's counsel, who also represented the various partnerships, and at least one other creditor maintained their position that the case should be converted instead of being dismissed.[1] Without taking any evidence, the bankruptcy court granted the motion to dismiss. An Order to that effect, dated June 2, 1994 and including various conditions, was subsequently filed. The instant appeal is from that Order.

### II. DISCUSSION

Chapter 11 of the Bankruptcy Code provides in relevant part:

> [O]n request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;

---

1. Not all of the creditors who joined in the motion to convert appear to have chosen to attend the June 1, 1994 hearing. As these creditors had also not filed answers to the motion to dismiss, their positions on the motion to dismiss were unclear when the June 1, 1994 hearing was held and remain unclear at this time.

(3) unreasonable delay by the debtor that is prejudicial to creditors;

. . . .

11 U.S.C. § 1112(b). Therefore, for a bankruptcy court to either dismiss or convert a Chapter 11 case it must first determine that "cause" as defined in 11 U.S.C. § 1112(b) exists. *See, e.g., In re Mechanical Maintenance, Inc.,* 128 B.R. 382, 386 (E.D.Pa.1991) (citing cases). If it does determine that such cause exists, then the bankruptcy court must consider "the best interest of creditors and the estate" before deciding whether to dismiss or convert the case. *Id.* (citing cases).

■ With regard to the determination of "cause," appellant argues that no evidence was presented to the bankruptcy court regarding whether cause existed. In its own answer to the motion to dismiss, however, appellant stated that such cause existed; specifically, appellant asserted that "the Debtor has not made any progress, let alone substantial progress, towards reorganization," that "the case has been pending for more than one (1) year and that the Debtor has been unable to propose a confirmable plan of reorganization, nor can he," and that "the actions of the Debtor constitute an unreasonable delay that is prejudicial to the creditors and the estate." Answer of Kates parties to motion of United States Trustee to dismiss case at 3. Appellant also argued that there was cause, as defined in 11 U.S.C. § 1112(b), in his own motion to convert and to appoint a trustee.[2] Kates parties' motion to convert and to appoint a trustee ¶¶ 25–27. Since appellant has admitted and indeed relied upon the fact that cause as defined in 11 U.S.C. § 1112(b) existed, it cannot now challenge the bankruptcy court's determination that such cause existed. Therefore, the only question before this Court is whether the decision of the bankruptcy court to dismiss the case instead of converting it to Chapter 7 was "in the best interest of creditors and the estate."

## A. *Standard of Review*

■ Courts have generally held that the decision regarding whether to convert or dis-

miss a Chapter 11 bankruptcy case is reviewed only for abuse of discretion. *E.g., Elmwood Dev. Co. v. General Elec. Pension Trust (In re Elmwood Dev. Co.),* 964 F.2d 508, 510 (5th Cir.1992); *In re Abijoe Realty Corp.,* 943 F.2d 121, 128 (1st Cir.1991); *Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir.1989); *Johnston v. Jem Dev. Co. (In re Johnston),* 149 B.R. 158, 160 (9th Cir. BAP 1992); *Mechanical Maintenance,* 128 B.R. at 386. This standard of review is supported by the legislative history of 11 U.S.C. § 1112(b); the applicable House and Senate reports both state that this section was intended to give "wide discretion to the court to make an appropriate disposition of the case" and to allow the court "to use its equitable powers to reach an appropriate result in individual cases." Senate Comm. on the Judiciary, Bankruptcy Reform Act of 1978, S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5903 ("Senate Report"); House Comm. on the Judiciary, Bankruptcy Reform Act of 1978, H.Rep. No. 595, 95th Cong., 2d Sess. 405–06 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6361–32 ("House Report"). Therefore, I will adopt this standard of review.

Any factual findings relied upon by the bankruptcy court in exercising its discretion are reviewed under a clearly erroneous standard and any legal conclusions relied upon by the bankruptcy court are subject to plenary review. *Elmwood Dev. Co.,* 964 F.2d at 510; *see also Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988) ("The findings of fact by the bankruptcy court are reviewable only for clear error. Legal questions are, of course, subject to plenary review.") (citations omitted).

## B. *Evidentiary Hearing*

■ Under 11 U.S.C. § 1112(b) a bankruptcy court may not dismiss a case until "after notice and a hearing." But this is not a rigid requirement; the Bankruptcy Code defines the phrase "after notice and a hearing" to mean "after such notice as is appro-

---

2. Even in the instant appeal appellant seeks not just to have the Order dismissing this case vacated. Rather, appellant seeks to have this Court order the bankruptcy court to convert the case to Chapter 7, which could only be done, of course, if cause existed.

priate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Therefore, courts have found that under limited circumstances an evidentiary hearing may not be required when considering a motion to dismiss or a motion to convert brought pursuant to 11 U.S.C. § 1112(b). *Elmwood Dev. Co.*, 964 F.2d at 512 ("A court may decline to conduct an evidentiary hearing where the alleged facts, even if true, would not change the outcome."); *see also Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Central Plaza I, Ltd.)*, 935 F.2d 723, 727 (5th Cir.1991) ("Where a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings."); *Industrial Ins. Serv. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir.1991) (the dismissal of a Chapter 7 bankruptcy case does not require a "the formalities of a full-blown evidentiary hearing" when an adequate opportunity was provided for the parties to support their positions); *In re Winslow*, 123 B.R. 641, 645 (D.Colo.1991) (no evidentiary hearing required when central issues had been covered at hearings prior to consideration of motion to convert), *aff'd* 949 F.2d 401 (10th Cir. 1991).

The transcript of the June 1, 1994 hearing reveals that when appellant raised the issue of an evidentiary hearing, the bankruptcy court inquired as to what appellant would seek to prove at such a hearing, and then proceeded on the assumption that what appellant sought to prove would be proved:

> THE COURT: What were you going to put on though, Mr. Witkes [counsel for appellant], just so I know? I really think that dismissal isn't such a bad idea, given where we are today.

> MR. WITKES [counsel for appellant]: Your Honor, the bulk of the—of our motion would be presented based upon the papers, the deposition transcripts, admissions of the debtor. We did want to put on

testimony with regard to the Tragish matter and we have various people on call.

> THE COURT: Well, let's assume the Tragish matter is everything you say it is. You know, aren't there the State Court remedies, you know, that you could utilize?

Hearing Before the Honorable David A. Scholl, United States Bankruptcy Judge, 6/1/94 ("Hearing, 6/1/94"), at 23. Appellant then proceeded to detail the alleged prejudice; while the bankruptcy court did not make explicit rulings that it was assuming that all of the facts alleged by appellant could be proved, the above passage indicates that the bankruptcy court was willing to make that assumption in order to avoid the need to hold an evidentiary hearing. Therefore, I find that the bankruptcy court assumed that appellant could prove whatever factual underpinnings were required for the alleged prejudice asserted by appellant during this hearing. Since the bankruptcy court decided to dismiss the case even given this assumption, the court did not abuse its discretion in choosing not to hold an evidentiary hearing.

### C. *Dismissal*

■ The remaining question, therefore, is whether, assuming that all of the matters that appellant sought to prove were proven, the bankruptcy court abused its discretion in granting the motion to dismiss. I find that the bankruptcy court did abuse its discretion because it failed to properly consider all of the alleged adverse effects to appellant's interests of dismissal.

During the June 1, 1994 hearing on the motion to dismiss, appellant made the following arguments to the bankruptcy court:

> THE COURT: Let me ask you this: why wouldn't you agree to dismissal?

> MR. WITKES: We believe, your Honor, that having moved for protection under the Bankruptcy Code, having voluntarily brought this case that the debtor can't go on with the delay that's gone on here for this amount of time and then if he doesn't like the way things are going, to simply move to dismiss the case.

> We think the record is such that conversion is appropriate. In addition—

**THE COURT:** Well, how are you prejudiced though? That—

**MR. WITKES:** Well, we're prejudiced in this way, your Honor, and I'm speaking both for Mr. Kates and for clients who have gone before, we believe that both in the course of this case and even before this case it has been uncovered additional improprieties by the debtor with respect to his former clients. And we think that the most appropriate forum for those clients to seek redress of their claims is in one matter which is this bankruptcy.

\*      \*      \*      \*      \*      \*

**MR. NICHOLS** [counsel for the estate of Philip Tragish, an alleged former client of debtor] We would join in this motion to convert simply because I think that in having gone at it for 13 months, I've been informed, we seem to be at a point where there is some action ready to be taken for discovery to get these files out and a dismissal at this time, we would just be starting all over again in State Court.

\*      \*      \*      \*      \*      \*

**THE COURT:** Well, let's assume the Tragish matter is everything you say it is. You know, aren't there the State Court remedies, you know, that you could utilize?

**MR. WITKES:** Well, I mean while it is true that there are forums available in different courts and there may be RICO claims filed in the Federal District Court, but again—

\*      \*      \*      \*      \*      \*

**MR. WITKES:** Again we just feel that having used the bankruptcy process for 13 months to forestall all of these things from happening, having facts and circumstances coming to light in the course of this bankruptcy including what we feel to be improprieties both in the underlying Tragish matter and what we maintain has been a, basically a cover-up of that as well, that what we feel that the debtor has used this bankruptcy to his advantage to forestall the creditors, for that reason the case should remain in Bankruptcy Court as a Chapter 7.

Also, I mean, the hearing, while we don't believe we need testimony about the other clients because we think that that's conceded on the record and there are legal issues there, but again this is the one forum where all these issues can be maintained.

Then just finally while I hear all of the people here ... saying that they support a dismissal, every one of them really without exception has said you have dismissal, but take care of these issues we have in the Bankruptcy Court. So that all the parties, including the creditors with a couple of exceptions seem to say yeah, dismiss it but before you do that, let me get some further protection from the Bankruptcy Court.

And if there is going to be protection from the Bankruptcy Court, then the whole thing should stay here as a Chapter 7.

Hearing, 6/1/94, at 7–9, 23–24. The bankruptcy court disagreed, however, and found that appellant had failed "to articulate any manner in which their interests would be prejudiced by granting [the motion to dismiss]." Order, 6/2/94 at 1.

■ Appellant argues that this determination by the bankruptcy court was incorrect. Besides repeating the arguments that he made during the June 1, 1994 hearing, appellant also repeats before this Court the allegations that he made in his motion to convert. A threshold issue is, therefore, whether these allegations are properly before this Court given that they were not raised during the June 1, 1994 hearing.

Although appellant failed to raise the allegations contained in his motion to convert during the June 1, 1994 hearing, appellant did state during that hearing that he was still pursuing his motion to convert. Hearing, 6/1/94 at 7. In addition, the motion to convert was closely related to the motion to dismiss as both were made at approximately the same time, both were made in response to same invitation by the bankruptcy court, both were made pursuant to 11 U.S.C. § 1112(b), and, finally, the motions were mutually exclusive: the granting of one necessarily constituted a denial of the other. Therefore, I find that these allegations were before the bankruptcy court during its consideration of the motion to dismiss even though appellant failed to raise them orally

during the hearing. As a result, these allegations are now properly before this Court.

The next question is whether the bankruptcy court considered these allegations when it decided the motion to dismiss. While the bankruptcy court's holding of no articulated prejudice appears to have been based solely on the appellant's statements made during the hearing,[3] the resolution of this question is unnecessary. If, on one hand, the bankruptcy court did not consider these allegations at all, the order dismissing the case would need to be vacated if appellant's allegations show prejudice to appellant's interests resulting from dismissal. If, on the other hand, the bankruptcy court did consider these allegations, the dismissal would again need to be vacated if appellant's allegations show prejudice to appellant's interests resulting from dismissal. Since no evidentiary hearing was held, these factual allegations must be assumed to be true.[4]

■ In his motion to convert, appellant alleged that debtor was mismanaging the estate, that further litigation outside of a Chapter 7 proceeding would diminish the estate, and that debtor was improperly diverting income from the estate during the pendency of the bankruptcy. Kates parties' motion to convert and to appoint a trustee ¶¶ 6, 27, 47, 54, 59, 60, 123–48. Specifically, appellant alleged that debtor has mismanaged the estate by, for example, improperly transferring assets of the estate to others as gifts, making improper payments from the estate, failing to maintain adequate financial records, and improperly using a special counsel. *Id.* at ¶¶ 122–48. Appellant also alleged that debtor had diverted fees properly owed to the estate to his daughter. *Id.* at ¶¶ 51–72. Since these allegations, which must be assumed to be true, indicate that removing debtor from the supervision of the bankruptcy court could lead to continued diminution of debtor's assets and therefore, possibly, a reduction in the portion of appellant's claims that would be satisfied, I find that these allegations show prejudice to appellant's interests resulting from dismissal.[5] Therefore, the bankruptcy court's order dismissing the case must be vacated and this case must be remanded to the bankruptcy court in order for the bankruptcy court to consider the allegations contained within the motion to convert.

## III. CONCLUSION

For the foregoing reasons, the June 2, 1994 Order of the bankruptcy court dismissing the case will be vacated, and the case will be remanded to the bankruptcy court for further proceedings not inconsistent with this memorandum opinion.

---

**3.** The bankruptcy court decided to dismiss the case during the hearing, within minutes of these arguments having been made. Hearing, 6/1/94 at 26.

**4.** Debtor argues before this Court that many of appellant's allegations were rejected by the examiner. Assuming that this is true, the examiner's conclusions are not binding on the bankruptcy court, and the record on appeal fails to establish that those conclusions were adopted by the bankruptcy court as its own. Indeed, nothing in the record on appeal demonstrates that the bankruptcy court ever made any factual findings relating to these allegations.

**5.** Even if these allegations are shown to be true, the bankruptcy court is not necessarily required to convert this case to Chapter 7 or even to deny the motion to dismiss. Rather the bankruptcy court is simply required to consider these allegations in conjunction with all the rest of the circumstances of the case in order to determine whether dismissal or conversion is in "the best interest of creditors and the estate." *See Mechanical Maintenance*, 128 B.R. at 388.